# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| **DEBE OLSON**<br>  **Plaintiff,** | )    JURY TRIAL DEMANDED<br>)<br>) |
| VS. | )    Civil Action No. 4:17-cv-01898<br>) |
| **FARMERS NEW WORLD LIFE INSURANCE COMPANY AND FARMERS GROUP INC.,**<br>  **Defendants** | )<br>)<br>)<br>)<br>) |

## PLAINTIFF'S SECOND AMENDED CLASS COMPLAINT

Plaintiff, Debe Olson, Individually and as Class Representative files this Second Amended Complaint against Defendants and makes a demand for a jury trial. Plaintiff would show the Court the following:

### I.   INTRODUCTION

1. The Farmers Defendants secretly took interest from about 120,000 existing policyholders. This was done to induce about 215,000 new policyholders to buy by quoting them an artificially high rate during a period of declining interest rates. The practice was stopped because Farmers admitted it was unfair for existing policyholders to subsidize new ones. The practice was never disclosed to the

- 1 -

policyholders and Farmers kept the profits for themselves. Farmers also never disclosed that there was a transfer of the investment risk to their universal life policyholders, per their own expert, Professor Harold Skipper.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

3. Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Plaintiff is a citizen of Texas, and Defendant Farmers Group, Inc. is a citizen of California and Farmers New World Life Insurance Company is a citizen of Washington.

4. Therefore, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A). Furthermore,

Plaintiff alleges on information and belief obtained from the Defendants in another case that the total number of members of the proposed Plaintiff Class is greater than 300,000, pursuant to 28 U.S.C. § 1332(d)(5)(B).

5. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the Subject Product of this action in this judicial district.

### III. PARTIES

6. Plaintiff, Debe Olson, Individually and as Class Representative, is a resident of Harris County, Texas.

7. Defendant, Farmers New World Life Insurance Company ("FNWL"), having answered herein may be served by serving its attorneys of record.

8. Defendant, Farmers Group, Inc., ("FGI") incorrectly originally named as Farmers Insurance Group, having answered herein may be served by serving its attorneys of record. Hereinafter, both FNWL and FGI will be referred to as "Farmers."

### IV. FACTUAL BACKGROUND

9. Debe Olson is the owner of a $50,000 Farmers Universal Life Policy

("FUL"). These policies were sold by Farmers New World Life Insurance Company ("FNWL") from 1984 to 1993. At that point in time, the FULs were discontinued by Farmers. At all material times herein, Farmers Group, Inc. ("FGI"), which was headquartered in Los Angeles, owned "FNWL" and made the material decisions about running the company. Farmers sold approximately 120,000 FUL policies that will be affected by the following act of interest taking. In addition, from 1987 through December 31, 1996, Farmers also sold another policy called the Farmers Flexible Universal Life Policy ("FFUL"). Beginning in 1997, policy changes and changes in disclosure requirements were required by the National Association of Insurance Commissioners ("NAIC").

## V. FARMERS' UNDISCLOSED INTEREST TAKING

10. In 1993 interest rates were declining. In or about March of 1993, the Farmers Interest Committee, which was made up of Farmers high ranking executives, primarily from FGI, who sat on the board of FNWL and controlled the FNWL decisions, decided that, since interest rates were declining and the FUL was being discontinued, Farmers would take interest from existing FUL policyholders to quote a higher rate to lure in new FFUL policyholders. The decision to implement this scheme was never disclosed to any of Farmers' policyholders or Farmers agents. Approximately 215,000 FFUL policies were sold

utilizing the higher deceptive interest rates. At some point Farmers may have taken interest from existing FFUL policyholders as well. In or about March 1996, the scheme was discontinued after Farmers' own 1996 Interest Committee Minutes admitted that it was unfair to existing policyholders to subsidize new ones.

## VI. FARMERS' UNDISCLOSED TRANSFER OF THE INVESTMENT RISK TO ITS POLICYHOLDERS, THE CLASS MEMBERS AND THE INHERENT UNDISCOVERABILITY OF BOTH OF THESE CONTINUING ACTS

11. Farmers' own expert, Professor Harold Skipper, admitted that there was an undisclosed transfer of investment risk to universal life policyholders. This would apply to policies such as the FUL and FFUL. Plaintiff alleges that this was risk

which was never disclosed to Farmers' policyholders. and that this undisclosed scheme was practiced throughout the United States. Professor Skipper further admitted that Farmers' policyholders could not read and understand their policies on their own. Skipper was also forced to admit in his deposition testimony that he had authored a paper stating these facts. The paper went on to conclude that this inability of policyholders to read and understand their policies was the reason why insurance regulations and laws were needed in this country.

12. Additionally, David Demmon, a Farmers executive. and a former head of the Interest Committee, also admitted that these plans and practices were made in secret and intentionally carried out without the knowledge of Farmers' policyholders and agents.

13. Therefore Plaintiff pleads the discovery rule, and alleges that the pendency of another class in the case entitled, *Fairbanks v. Farmers Insurance Group, et al.,* Case No.: BC305603, filed in the California Superior Court of Los Angeles County, tolled the Statute of Limitations for the policyholders in this putative class. However, the claims made in this complaint, although contained in the *Fairbanks* complaint, were never part of a class certification motion that was heard and decided by the courts. The documents were deemed confidential and could not have been discovered by an outside source, let alone the class members. These causes of action were inherently undiscoverable. The California and Washington Departments of Insurance did not discover these practices.

14. Prior to that time, the *Binswanger v. Farmers Insurance Group et al* case was filed in the Austin Superior Court and it tolled the Statute of Limitations for the policyholders in this class as early as 1997 for Texas to 1998 for the rest of the country.

15. Moreover, the acts as alleged in Plaintiff's complaint are continuing torts. This is true because Farmers' has retained all of the profits it has earned from

the deceptive interest taking which increased its sales and continues to earn from the interest it obtained as a result of its fraudulent and deceptive practices from 1993 to the present. Farmers has also passed the investment risk to its unknowing policy holders in the class and has collected their premium dollars each year.

### VII. PLAINTIFF SEEKS A CLASS ACTION UNDER FRCP RULE 23

16. The Class period is from 1984 through December 31, 1996 which were the years the policies in question were sold by the Defendants. It includes all policyholders owning an FFUL policy and or FUL policy from 1984 to December 31, 1996. It excludes all ERISA plan participants. The First Cause of Action for the Unfair Interest Taking includes only those FUL policyholders who owned a policy at any time from March 1993 through March 1996. The subclass also includes FFUL policyholders who purchased during the time period from March1993 through March 1996. FFUL policyholders who may have had their interest taken at some point in time from March 1993 to March 1996 are also included in the class definition. The 2nd cause of action includes all 903,000 policyholders because the investment risk transfer was not disclosed to any of them. In the alternative, the classes only include policyholders who purchased FUL and/or FFUL policies in California or Texas as described in the class and subclass. These 2 states comprise approximately half of the policyholders in

question. It excludes the three percent of the policyowners whose policies were fully paid up and owed no further premiums.

17. (1) The class is so numerous upon information and belief with over 340,000 policyholders that joinder of class members is impracticable;

(2) there are questions of law or fact common to the class as set out herein;

(3) the claims or defenses of the class representatives are typical of those of the class since Ms. Olson purchased an FUL policy in 1986 and had her interest secretly taken from her and she was unaware of the transfer of the investment risk;

(4) and as the class representative, she will fairly and adequately protect the interests of the class.

(5) prosecution of separate actions risks either inconsistent adjudications which would establish incompatible standards of conduct for the Defendants or would as a practical matter be dispositive of the interests of others; and there is no cost effective way to warn the policyholders;

(6) The Defendants have acted or refused to act on grounds generally applicable to the class;

(7) and there are common questions of law or fact that predominate over any individual class member's questions and therefore a class action is superior to other methods of adjudication.

(8) Debe Olson should be appointed Class Representative and her Attorney should be appointed as Class Counsel.

## VIII. VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW 17200 AND TEXAS DECEPTIVE TRADE PRACTICES ACT AND INSURANCE CODE VIOLATIONS

18. The Defendants actions as described herein violated Section 17200 of the California Unfair Competition Law. The Defendants actions were unfair and likely to deceive policyholders. The Plaintiff pleads all 3 prongs of the UCL which includes unfairness, fraud and unlawfulness. The Plaintiff also pleads that the Defendants committed acts of untrue, unfair, unlawful and or deceptive advertising with respect to the deceptive interest rates, the interest taking as well as the undisclosed transfer of risk to the policyholders as additional UCL violations. California Law should control since all major decisions were controlled by FGI, a California corporation, which owned FNWL, a subsidiary corporation. All of the acts described hereinabove were undertaken in an effort to unfairly deceive and defraud the class as Farmers' agents were contractually obligated to sell insurance

to policyholders in accordance with Farmers' rules, regulations and procedures. Indeed, these acts escaped the notice of the Insurance Regulators of the various states for 20 years. All of these acts were a breach of the duty of good faith and fair dealing and were a predicate act for violations of the UCL.

19. In the alternative for the Texas policyholders the Texas Deceptive Trade Practices Act, Section 17.45 (5) defines Unconscionable Action or Course of Action as -- an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree. The Defendants committed these acts against Texas class members as already described herein.

20. Knowingly is defined as actual awareness at the time of the act or practice giving rise to the consumers claim. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness. Deceptive Trade Practices Act ("DPTA") Section 17.45 (9).

21. Intentionally is defined as actual awareness of the falsity, deception, or unfairness of the act or practice, coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. Intention may be inferred from objective manifestations that indicate that the person acted intentionally DPTA, Section 17.45 (13).

22. Section 17.46(5) was violated as the Defendant represented their policies had characteristics which they did not have.

23. Section 17.46(7) was violated because the policies were represented to have certain standards and quality to which they did not have.

24. Section 17.46(24) was violated because the Defendants failed to disclose information which was known at the time of the transaction. Had such information been disclosed, the Plaintiff and other class members would not have entered into these agreements.

25. The Plaintiffs are entitled to treble damages because of the unconscionable, knowing and intentional acts of the Defendants, as well as reasonable attorneys fees of at least twenty-five percent of the gross settlement.

## IX. FURTHER VIOLATIONS OF THE LAW AND PREDICATE ACTS
## CA Codes (ins:790-790.15) INSURANCE CODE SECTION 790-790.15

26. Insurance Code Section 790 *et seq.*, provides for regulation of trade practices in the business of insurance. The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 (Public Law 15, Seventy-ninth Congress), by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or

unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

27. Insurance Code Section 790.02 provides that "No person shall engage in this State in any trade practice which is defined in this article as, or determined pursuant to this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance".

28. California Insurance Code Section 790.03. defines unfair methods of competition and unfair and deceptive acts or practices in the business of insurance as:

(a) Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, or surrender his

or her insurance.

29. The Texas Insurance Code Sec. Sec. 541.003 *et seq.* prohibits unfair method of competition or an unfair or deceptive act or practice in the business of insurance as follows:

(a) Sec. 541.051. "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:

(A) the terms of the policy;

(B) the benefits or advantages promised by the policy; or

(C) the dividends or share of surplus to be received on the policy;

(2) make a false or misleading statement regarding the dividends or share of surplus previously paid on a similar policy;

(3) make a misleading representation or misrepresentation regarding:

(A) the financial condition of an insurer; or

(B) the legal reserve system on which a life insurer operates;

(4) use a name or title of a policy or class of policies that misrepresents the true nature of the policy or class of policies; or

(5) make a misrepresentation to a policyholder insured by any insurer for the purpose of inducing or that tends to induce the policyholder to allow an existing policy to lapse or to forfeit or surrender the policy.

30. Sec. 541.052 likewise provides that:

(a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to make, publish, disseminate, circulate, or place before the public or directly or indirectly cause

to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance or a person in the conduct of the person's insurance business.

31. The acts described above were violated by the Defendants as set out in paragraphs 1 through 23, which are incorporated by reference as though fully set forth herein.

## X. DAMAGES RESTITUTION AND RECISSION

32. Plaintiff, on behalf of the class, pleads for restitution and rescission of all amounts collected by Farmers from the inception of this scheme through the present for all class members for both causes of action less the cost of term insurance as set out under the decision in the California case of *Korea Supply Co. v. Lockheed Martin, et al*, 29 Cal. 4th 1134, 63 P. 3d 937 (Cal. 2003). The Plaintiff pleads for damages under the California Insurance Code as well as punitive damages under California Civil Code Section 3294. Plaintiff also pleads for damages under the Texas Deceptive Trade Practices Act and treble damages under said act if applicable as well as damages under the Insurance Codes and common law damages. The Texas Insurance Code provides for statutory damages under Section 541.152 which can include treble damages and attorneys fees. A new case from the Texas Supreme Court, *USAA Tex. Lloyds Co. v. Menchaca,* Tex. Lexis 361 at *3-4 (Tex. 2017) clarifies the law on damages that may be recovered from an insurer such as the Defendants. Those rights include the following:

1. An insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of benefits.

2. Even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right.

3. If an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits.

## XI. ATTORNEYS FEES

33.  The Plaintiff is entitled to reasonable attorneys fees of at least thirty three percent of the total amount collected, and will make a demand for such fees under the Texas Deceptive Trade Practices Act, and any other applicable law and or common law including the Insurance Codes of California and Texas as necessary.

## XII. PUNITIVE DAMAGES

34.  Plaintiff is entitled to punitive damages because of the Defendants' knowing and intentional actions described throughout this Complaint under common law principles as well as the statutory violations described here.

## XIII. PROXIMATE AND OR PRODUCING CAUSE

35.  All of the Defendants actions, together and singularly, were a

proximate and or producing cause of the Plaintiff's damages, as alleged herein.

## PRAYER

WHEREFORE Plaintiff prays all Defendants be cited to appear and answer, that a class be certified as described and that Debe Olson be appointed Class Representative and that her Attorney David Sheller be appointed Class Counsel, and upon final trial the Plaintiff be awarded all sums due and or recession and or restitution along with any other remedy plead herein to maximize the Plaintiff's and class recovery along with attorneys fees of at least thirty three percent of the gross amount collected, punitive damages, and pre and postjudgment interest and for such other and further relief both at law and in equity to which the Plaintiff may be justly entitled.

Respectfully submitted,

/s/ David L. Sheller

DAVID L. SHELLER
Tx. Bar No. 18193700
Fed. Bar No. 85884
Sheller Law Firm PLLC
360 FM 1959
Houston, Texas 77034
T 832-841-1175
F 281-484-2101
david@shellerlawfirm.com
**ATTORNEY IN CHARGE FOR
PLAINTIFF AND THE CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this complaint was sent to all counsel of record by electronic service on July 17, 2017.

/s/ David Sheller